834 So.2d 536 (2002)
STATE of Louisiana,
v.
David LEE.
No. 2002-KA-0955.
Court of Appeal of Louisiana, Fourth Circuit.
December 4, 2002.
Harry F. Connick, District Attorney, Leslie Parker Tullier, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
*537 Laura Pavy, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MIRIAM G. WALTZER, Judge MICHAEL E. KIRBY).
MIRIAM G. WALTZER, Judge.
STATEMENT OF THE CASE
Defendant David Lee was charged by bill of information with one count each of aggravated burglary (La. R.S. 14:60), aggravated crime against nature (La. R.S. 14:89.1), aggravated arson (La. R.S. 14:51), simple burglary of an inhabited dwelling (La. R.S. 14:62.2), aggravated rape (La. R. S.14:42), and extortion)La. R.S. 14:66). The defendant pled not guilty at his 3 March 1999 arraignment. Defendant elected to be tried by the trial. On 12 August 1999 the trial court found the judge defendant guilty as charged. On 28 September 1999 the defendant was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence for the aggravated rape count, to seven years for the count of aggravated burglary, thirteen months for the count of aggravated crime against nature, to three years for the count of aggravated arson, seven years for the count of simple burglary of an inhabited dwelling count, and two years for the extortion count with all the sentences to run concurrently. On that same date the state filed a multiple bill, and the trial court denied the defendant's motion for a new trial. On 22 March 2000, after a hearing, the trial court found the defendant to be a third felony offender. The trial court vacated its previous sentence of seven years for the aggravated burglary count and re-sentenced the defendant to life imprisonment without the benefit of probation, parole or suspension of sentence. On 7 February 2002 the trial court granted the defendant an out of time appeal.
STATEMENT OF FACTS
N.M.[1] testified she met the defendant one day on the street and they had a discussion of the Bible and scripture. The victim further testified that she allowed the defendant to live with her for a week because he had no place to live. At the end of the week the victim asked the defendant to leave her home. Initially, the defendant resisted but he then complied and left the victim's apartment. According to the victim a few days later the defendant returned to her apartment asking her to let him in but she refused. She testified that the defendant then forced his way into her apartment by pushing a window unit air conditioner back into her apartment and crawling in through the opening. Once inside the apartment the defendant allegedly held the victim at knifepoint for hours. She further testified while the defendant held her hostage at knifepoint he put the air conditioner unit back in the window, put the curtains back at the window, forced her to cook him a meal, smoked a cigarette, drank a beer, and then forced her to have intercourse and perform oral sex. As the morning approached the defendant then told N.M. to set her alarm clock so that he would not be late for work. After the defendant left the apartment for work N.M. called 911 to report that she had been raped.
Detective Bradley Glaudi testified that while the detectives were conducting their investigation at N.M.'s apartment the defendant called several times asking her "not to do this to me ... you know I didn't break into your house ... I'll pay you one thousand dollars."
*538 Officer Kenneth Spooner testified that he responded to a burglary call at the victim's apartment and when he arrived he found her front door open and her iron security door locked. Officer Spooner then walked around the side of the residence and encountered N.M., and a few seconds later they heard a loud explosion in the rear of the building. As the officer and the victim walked to the front of the apartment there was a second explosion. Officer Spooner testified he heard footsteps rapidly moving from the rear to the front of the apartment. The officer then saw the defendant exit the apartment using a key to open the iron security door. The defendant was detained, read his rights, and placed in a squad car. The officer testified that the defendant told him "that if the victim testified against him, he would kill her" and asked "if they could lift his fingerprints off some gas cans."
Madeline Collins, of the New Orleans Police Department Crime Lab, testified that she found seminal fluid on a pair of stretch pants and a comforter but she was unable to type the material and match it to any particular individual.
Captain Vincent Roppolo of the New Orleans Fire Department testified as an expert arson investigator that the fire at the victim's apartment was intentionally set using an accelerant.
Joe Tuffaro, of the NOPD Crime Lab, testified that material recovered from the victim's apartment tested positive for the presence of a Class II accelerant consistent with gasoline.
The defendant testified on his own behalf that he and the victim lived together for four months and that he repeatedly contributed financially to the cost of maintaining the household. The defendant further testified that he realized the victim had psychiatric problems so he moved out of the apartment. The defendant denied breaking into N.M.'s apartment and raping her.
DISCUSSION
The defendant complains the trial court erred by proceeding to trial without first ascertaining the defendant's competency to proceed.
La.C.Cr.P.art. 643 provides in part:
The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed.
The Louisiana Supreme Court, in State v. Comeaux, 514 So.2d 84 (La.1987), stated that the trial judge's determination of capacity to stand trial is entitled to great weight and will not be disturbed on appeal absent abuse of discretion. However, La. C.Cr.P. art. 642 provides in part that "[w]hen the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed." In addition, La.C.Cr.P. art. 647 provides in part that "[t]he issue of the defendant's mental capacity to proceed shall be determined by the court in a contradictory hearing."
In State v. Nomey, 613 So.2d 157 (La. 1993), the Court found that the trial court's failure to rule on the defendant's competency prior to accepting his guilty pleas violated the defendant's right to a fair trial. In Nomey, the court ordered a lunacy commission to examine the defendant's mental capacity to proceed. The psychiatrists examined the defendant, and before they could convey their findings to the trial court, the defendant pled guilty to the charges. After the plea, the trial court received the lunacy report. In an application for post conviction relief, the defendant raised the issue of his capacity to *539 plead guilty voluntarily. The trial court looked at the findings of the lunacy commission and found that the defendant was mentally competent at the time of his pleas. On review, the Supreme Court found the trial court erred by making this retroactive finding. The Court found the trial court violated both La.C.Cr.P. arts. 642 and 647 by taking the pleas before determining the defendant's mental capacity to proceed. The Court stated:
It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing his defense may not be subject to trial. Drope v. Missouri, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975). The failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial. Id. at 172, 95 S.Ct. at 904; Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); State v. Rogers, 419 So.2d 840 (La.1982). Our statutory scheme for detecting mental incapacity "jealously guards a defendant's right to a fair trial." Rogers, at 843.
Id., at 161. The Court found that it did not matter whether the trial court could determine after the fact that the defendant was competent to proceed at the time he gave his pleas because "[t]he fact remains that defendant was deprived of the protective procedures set forth in our criminal code prior to the entry of his guilty pleas, thus depriving him of his due process rights." Id.
In State v. Bonicard, 98-0665 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, this court distinguished Nomey. In Bonicard, the court appointed a sanity commission. The transcript of the sanity hearing showed one doctor testified that he thought the defendant was competent to proceed, and it was stipulated that the other doctor's opinion would concur with that of the testifying doctor. The transcript did not show that the trial court then explicitly found the defendant competent, but instead the court set the case for trial. The defendant eventually pled guilty, and on appeal he sought to set aside his plea because the transcript did not reflect that the trial court made the competency finding. This court upheld the plea, finding that although the transcript did not show the finding, the minute entry and docket master entry of the date of the sanity hearing indicated the trial court found the defendant competent to proceed. The Supreme Court denied writs from this ruling. State v. Bonicard, 99-2632 (La.3/17/00), 756 So.2d 324.
In the instant case the defendant requested a lunacy hearing on 7 April 1999. The minute entries indicate the hearing was reset to 27 April 1999. There is no minute entry for 27 April 1999, but the docket master entry for that date indicates the defendant withdrew his request for a lunacy commission. However, the transcript of that date shows no such withdrawal. Indeed, the transcript shows defense counsel reminded the trial court of the lunacy hearing, and the court stated: "I'm going to call the doctors. This matter is set for trial tomorrow?" Defense counsel agreed the case was set for trial and then asked for a continuance of the trial to allow her to subpoena psychiatric records of the victim. The transcript ends with the court refusing to grant the continuance. There is no indication in the transcript or the docket master entry that the doctors testified or that the court made a ruling on competency. The successive minute entries (the court granted a joint continuance of the trial the next day) also *540 give no indication the court ever ruled on the defendant's competency.
Unlike Bonicard, where the record indicated that the court determined the defendant's competency to proceed before the defendant entered the plea, here the record is silent as to any such ruling. There is nothing in the record to show that the trial court considered defendant's competency before his trial. Therefore, we are compelled to reverse defendant's conviction and sentence.
CONCLUSION
For the above reasons, we reverse the defendant's convictions and sentences.
REVERSED.
NOTES
[1] Due to the nature of the offense, we will use the victim's initials in this opinion.