LEON A. CANNIZZARO, JR., Judge.
hThe defendant, David Lee, is appealing a decision by the trial court refusing to set aside his convictions and sentences. Mr. Lee contends that his right to due process was violated and that, therefore, he should be granted a new trial.
STATEMENT OF THE CASE
Mr. Lee was charged by a bill of information with one count each of (1) aggravated rape, (2) aggravated burglary, (3) aggravated crime against nature, (4) aggravated arson, (5) burglary of an inhabited dwelling, and (6) extortion. He pled not guilty to all charges at his arraignment, and he was tried before Judge Sharon Hunter. She found him guilty of all charges except the charge of aggravated arson. Instead of finding him guilty of that charge, she found him guilty of simple arson. Mr. Lee was sentenced to (1) life imprisonment without the benefit of probation, parole, or suspension of his sentence for aggravated rape, (2) seven years for aggravated burglary, (3) thirteen months for aggravated crime against nature, (4) three years for simple arson, (5) seven years for burglary of an inhabited dwelling, and (6) two years for extortion. All sentences were to be served concurrently in the custody of the Louisiana Department of Corrections with credit for time 12already served. The aggravated rape and aggravated burglary convictions were designated as crimes of violence.
After Mr. Lee’s motion for a new trial was denied, a multiple offender bill of information was filed. At the trial on the multiple offender bill of information, Mr. Lee was adjudicated a third felony offend *176 er under the Habitual Offender Law, La. R.S. 15:529.1. The trial court vacated Mr. Lee’s sentenced for his aggravated burglary conviction and re-sentenced him to life imprisonment without the benefit of probation, parole, or suspension of sentence as a third felony offender under the Habitual Offender Law.
Mr. Lee was granted an out of time appeal. On appeal this Court reversed Mr. Lee’s convictions and sentences, on the ground that the trial court failed to ascertain Mr. Lee’s competency to stand trial before proceeding to try him. State v. Lee, 02-0955 (La.App. 4 Cir. 12/4/02), 834 So.2d 536.[1] In State v. Lee, 03-0032 (La.6/27/03), 852 So.2d 987, the Louisiana Supreme Court in a per curiam opinion, reversed the decision of this Court and remanded the case to the trial court for the purpose of conducting an evidentiary hearing and reconstructing the proceedings as they related to the question of the defendant’s competency to stand trial.
The trial court reviewed the record and contacted the attorney who represented Mr. Lee at his trial in an attempt to determine what had transpired with respect to Mr. Lee’s original request for a competency hearing. The trial court | ^rendered its decision finding that Mr. Lee’s convictions and sentences should be affirmed. Mr. Lee is now appealing the trial court decision on the competency issue.
DISCUSSION

The Record

The record contains a minute entry dated April 7, 1999, that reflects that a hearing to determine Mr. Lee’s competency to stand trial was set for April 20, 1999. A minute entry dated April 20, 1999, reflects that the hearing was rescheduled for April 27, 1999. A transcript of the proceedings on April 27, 1999, reflects the following colloquy:
MR. JUPITER:
Your Honor, the first gentleman is David Lee. He’s scheduled for a lunacy hearing.
THE COURT:
Okay. I’m going to call the doctors. This matter is set for trial tomorrow?
MR. JUPITER:
Yes, Your Honor. It’s set for trial tomorrow, Your Honor. (Inaudible). I’m requesting a continuance.
The only other information in the record regarding the competency hearing is an entry on the trial court’s docket master that reads:
4/27/1999
DEFENDANT LEE APPEARED IN COURT FOR LUNACY HEARING ATTENDED BY OMODARE JUPITER. DEFENDANT WITHDREW REQUEST FOR LUNACY EXAMINATION. DEFENSE REQUESTED CONTINUANCE ON TRIAL. COURT DENIED. TRIAL CURRENTLY SET 4/28/99.
There is nothing in the April 27, 1999 transcript that is in the record, however, that refers to a withdrawal of the request for a competency hearing. ^^Additionally, there is nothing in the record to indicate whether or not the trial court ever determined Mr. Lee’s competency to stand trial.

Louisiana Supreme Court Instructions

In the Lee case, the Supreme Court instructed the trial court to hold an eviden-tiary hearing to make a determination regarding the trial court’s proceedings that were related to the question of Mr. Lee’s *177 competency to stand trial. The Supreme Court stated:
The court shall determine whether the trial judge granted, the defendant’s motion for appointment of a sanity commission, before the defendant attempted to withdraw the motion, thereby finding reasonable grounds to doubt the defendant’s competency to proceed and staying all further proceedings by operation of La.C.Cr.P. art. 642 until that determination was made. In the event that the trial judge did grant the motion before defendant attempted to withdraw it, the court shall further determine whether the trial judge then appointed (or failed to appoint) the commission doctors or conducted (or failed to conduct) a hearing on the commission’s reports and determined (or failed to determine) the defendant’s competency to proceed before he went to trial. On the basis of its factual findings, the court is then to rule on the question of whether the defendant is entitled to set aside his convictions and sentences under this Court’s decisions in State ex rel. Seals v. State, 00-2738 (La.10/25/02), 831 So.2d 828, and State v. Nomey, 613 So.2d 157 (La.1993).
03-0032, pp. 1-2, 852 So.2d at 987.

Trial Court Judgment on Remand

On remand to the trial court, Judge Benedict Willard considered the matter and concluded that there was “no evidence to suggest that the trial Judge made a ruling on the motion [for a competency hearing] prior to the defendant’s withdrawal [of the motion].” Judge Willard also stated in his reasons for judgment that he had sought the assistance of Mr. Lee’s trial attorney who indicated that “to 1 fjhis recollection no ruling was ever made.” Judge Willard held that “for the foregoing reasons and on the basis of factual findings, the district court does not find where the defendant is entitled to set aside his convictions and sentences.”
In response to the Supreme Court’s instructions that the trial court “determine whether the trial judge granted the defendant’s motion for appointment of a sanity commission, before the defendant attempted to withdraw the motion,”[2] Judge Willard concluded that there was no evidence that Judge Hunter had ruled on the motion before Mr. Lee attempted to withdraw it. Because the Supreme Court required further inquiry by the trial court judge, only if the trial court were to find that the motion had been granted prior to the attempted withdrawal, Judge Willard did not address the other issues raised by the Supreme Court.

Legal Analysis

We have reviewed the record and we, unlike Judge Willard, cannot conclude that there was no evidence that Judge Hunter had ruled on the motion for a competency determination before Mr. Lee withdrew the motion. There is clearly a possibility that Judge Hunter did grant the motion, because she stated on the record that “I’m going to call the doctors.” This indicates that she had granted the motion. Additionally, there is nothing in the record, other than a docket entry, to show that Mr. Lee, in fact, ever withdrew the motion.
The Supreme Court in Lee required the trial court to make additional inquiry if the trial court determined that the motion for a competency hearing was not withdrawn before the trial court judge had granted the motion. Because we find no evidence in the record from which we can confirm that a competency commission |fiwas ever appointed or that a competency hearing was conducted, we must consider Mr. *178 Lee’s appeal under the Supreme Court’s decisions in the Seals and Nomey cases, as required by the Supreme Court’s ruling in Lee.
In the Nomey case, the defendant filed a petition for the appointment of a competency commission. The record in Nomey showed that the trial court appointed a competency commission, that the commission examined the defendant, and that the commission found the defendant competent to stand trial. The defendant then pled guilty to the charges against him. Prior to accepting the guilty pleas, the trial court determined that the pleas were “knowingly, intelligently, and voluntarily entered.” 613 So.2d at 159. There was no evidence in the record, however, that the trial court conducted a contradictory hearing on the issue of the defendant’s competency prior to the acceptance of his guilty pleas.
The defendant filed a motion for post conviction relief, alleging that the trial court’s failure to conduct a competency hearing prior to accepting his guilty pleas violated his right to due process. The Supreme Court in Nomey held that the trial court’s acceptance of the defendant’s guilty pleas prior to holding a competency hearing violated the defendant’s right to due process as set forth in La.C.Cr.P. articles 642 and 647. Article 642 provides in relevant part that “[w]hen the question of the defendant’s mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution ... until the defendant is found to have the mental capacity to proceed.” Article 647 requires that “[t]he issue of a defendant’s mental capacity to proceed shall be determined by the court in a contradictory hearing.” Because no competency hearing was ever conducted in the Nomey case, the Supreme Court held that all proceedings taken after the appointment of the |7sanity commission, including the defendant’s guilty pleas, were vacated. The case was then remanded to the trial court for further proceedings.
Almost a decade later, however, in the Seals case the Supreme Court reconsidered the issue of a defendant’s rights under La.C.Cr.P. arts. 642 and 647. In Seals the Supreme Court noted that there is a “longstanding precept that a defendant does not have an absolute right to the appointment of a sanity commission simply upon request.” 00-2738, p. 5, 831 So.2d at 832. Nevertheless, the failure to resolve the issue of a defendant’s capacity to proceed to trial may result in either nullification of the conviction and sentence or a nunc pro tunc hearing to determine competency retrospectively. 00-2738, p. 6, 831 So.2d at 833. The Supreme Court stated that “in certain instances, a nunc pro tunc hearing on the issue of competency is appropriate ‘if a meaningful inquiry into the defendant’s competency’ may still be had.” Id. The Supreme Court further stated in the Seals case that the trial court is in the best position to make the competency decision nunc pro tunc and that the determination of whether a defendant’s conviction and sentence should be nullified or whether a nunc pro tunc hearing should be held must be made on a case by case basis. Id.
The Supreme Court in Seals listed the factors that a court may consider to conduct a proper nunc pro tunc inquiry into a defendant’s competency to stand trial. These are known as the Bennett factors.[3] The Bennett factors include the following:
*179 [Wlhether [t]he [defendant] is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to |smaintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary t.o defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.
00-2738, p. 7, 831 So.2d 828 at 833-34.
In the instant case, we find that the record provides sufficient evidence for a nunc pro tunc determination of Mr. Lee’s competency to stand trial. Mr. Lee testified at the trial, and his testimony can be used to reach certain conclusions regarding the Bennett factors. Normally, we would remand this matter to the trial court for a nun pro tunc hearing on Mr. Lee’s competency, because the trial court judge before whom Mr. Lee was tried would be in a better position than this Court to make a nunc pro tunc determination regarding Mr. Lee’s competency. In this case, however, the trial court judge who presided at Mr. Lee’s trial is no longer sitting on the trial court bench, and another judge considered Mr. Lee’s claims on remand from the Supreme Court. Therefore, we believe that because the trial court has no more first-hand knowledge of the trial than we do, it is in the interest of judicial economy for us to determine whether Mr. Lee was competent to stand trial when he did.

The Bennett Factors

In determining whether Mr. Lee was competent to stand trial, we have considered the Bennett factors as set forth in the Seals case. We have based our decision regarding each of the factors on Mr. Lee’s testimony at his trial.
Ifll. Was Mr. Lee able to recall and relate facts pertaining to his actions and %uhereabouts at certain times?
Mr. Lee testified in his own defense, and his testimony reflects that he was clearly able to recall and relate the facts pertaining to his actions and whereabouts during the relevant time periods. The victim and Mr. Lee both testified that they had met on Canal Street when they began a conversation about religion. The victim testified that after they had become acquainted, Mr. Lee needed a place to stay, and she permitted him to live with her. She testified that they lived together for a very short time, but Mr. Lee explained that he and the victim had, in fact lived together for approximately four months. He also explained that during that time, he held a job and gave one hundred dollars a week from his paycheck to the victim.
Mr. Lee’s defense strategy was to attack the victim’s credibility, and he did this by explaining that after living with the victim for several months, he realized that during the time periods when she did not take the medicines prescribed for her psychiatric illnesses, she became mentally unstable. Mr. Lee said that upon discovering the victim’s mental instability, he moved out of the victim’s home. Mr. Lee also testified that the victim used illegal drugs, thus casting further doubt on the victim’s credibility.
Mr. Lee’s testimony at his trial reflects that he was able to remember and very clearly and concisely describe in great detail his version of his actions and his whereabouts both before and during the time of the crimes with which he was charged. He also recalled specific dates *180 and times. Additionally, he refuted the victim’s testimony. For example, he testified that he was not a beer drinker and that he was not a smoker, after the victim had testified that Mr. Lee had smoked a | ^cigarette and had drunk a beer prior to raping her. Mr. Lee’s testimony reflects that he was never unsure or confused about his versions of his actions and whereabouts. Therefore, we find that Mr. Lee met the requirements of this Bennett factor.
2. Was Mr. Lee able to assist his counsel in locating and examining relevant witnesses?
The criminal activity in this case involved only Mr. Lee and the victim, and neither the victim nor Mr. Lee said that there were any witnesses to the crimes. Nevertheless, we note that Mr. Lee testified in court that he had requested his counsel to obtain the records of the psychiatric treatment and hospitalization that Mr. Lee alleged that the victim had undergone. The purpose for which he wanted to obtain those records was to support his claims that the victim was mentally unstable and, therefore, had fabricated her allegations against him. In the absence of any witnesses to his crimes, he was still clearly able to advise his counsel regarding evidence that would be relevant to his defense. We find that Mr. Lee met the requirements of this Bennett factor.
3. Was Mr. Lee able to maintain a consistent defense?
In testifying in his own defense at the trial, Mr. Lee cogently formulated and presented a defense to the charges against him. He consistently maintained that he did not rape the victim, that she was mentally unstable, and that she had fabricated her allegations against him. He never wavered from these claims while he was testifying both on direct and on cross-examination. Mr. Lee responded to the allegations by the victim with detailed explanations that were designed to refute her testimony.
Inin connection with the extortion charge against him, Mr. Lee explained that he did not tell the victim that he would pay her $1,000 if she did not report what he had done to her. He countered her testimony to that effect by asserting that he had promised to give her $1,000 for a Christmas present.[4] Mr. Lee was clearly able to provide a rebuttal to the victim’s testimony relating to the extortion charge against him.
The transcript of Mr. Lee’s testimony demonstrates that he understood the questions posed to him and gave responsive answers that were clear and coherent. Also, he did not need to have the questions unnecessarily repeated or rephrased. The transcript further demonstrates that Mr. Lee was able to maintain a consistent defense at his trial. We find that Mr. Lee met the requirements of this Bennett factor.

4.Was Mr. Lee able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements?

Mr. Lee was obviously able to advise his counsel of several inconsistencies in the testimony at his trial, because some of the questions that his trial attorney asked were specifically designed to elicit responses that would raise doubts about the testimony of the victim. Mr. Lee was the only person who would have been able to give his attorney the information upon which those questions were based. For example, Mr. Lee admitted that the victim testified *181 correctly that he had scratched her at one time, but he then asserted that this occurred only after the victim had stabbed him. He also provided a detailed explanation of why there was no police report of the alleged stabbing by the victim. Mr. Lee’s trial attorney asked him questions designed to refute the testimony of the victim regarding [^clothing that was photographed in her home. Additionally, Mr. Lee answered questions designed to elicit testimony from him that refuted the victim’s contention that Mr. Lee only gave her a small amount of money on only one occasion. Mr. Lee contended that he gave the victim a portion of his paycheck on a weekly basis for several months.
We also note that during a discussion between the prosecutor and Mr. Lee’s trial attorney regarding the admissibility of a photocopy, rather than an original, of a receipt, Mr. Lee interrupted the discussion to state that his mother had the original receipt. Additionally, Mr. Lee attempted to refute the testimony of the arson investigator that an accelerant was used to start the fire in the victim’s home. Mr. Lee contended that contrary to the investigator’s testimony, the fire was accidental and was ignited when an éxplosion occurred in the house.
Mr. Lee also attempted to refute the victim’s testimony that he stole the key to her house at the time that he raped her. He claimed that she had given him the key when he was living with her. He further claimed that he was sleeping at the victim’s house when an explosion awakened him in an intoxicated state. He implied that the intoxicated state might have been induced by a drug that the victim had given him without his knowledge. He then claimed that when he awoke in the intoxicated state and realized that the house was in flames, he fled the house. He said that he used the key, which he testified that the victim had given him, to flee through a locked security gate that protected the house.
Mr. Lee was clearly able to consider the testimony of witnesses and assist his trial attorney in challenging what Mr. Lee alleged were misstatements in the testimony. We find that Mr. Lee met the requirements of this Bennett factor.
11S5. Was Mr. Lee able to make simple decisions in response to well-explained alternatives?
It is clearly evident from Mr. Lee’s testimony that he was able to make not only simple, but also complex, decisions regarding the alternatives regarding his trial and the trial strategy. The record reflects that Mr. Lee chose to be tried before a judge rather than a jury, and he made the decision to testify on his own behalf. He made these decisions, which involved the waiver of his constitutional right to a trial before a jury of his peers and his constitutional right not to incriminate himself, after his trial attorney explained to him the choices presented to him and the consequences of those choices. We find that Mr. Lee met this Bennett factor.
6. Was Mr. Lee capable of testifying in his own defense if necessary to the defense strategy in his case?
Mr. Lee did testify in his own defense at the trial, and he testified quite capably on both direct and cross-examination. We find that Mr. Lee met the requirements of this Bennett factor.
7. To what extent, if any, was Mr. Lee’s mental condition apt to deteriorate due to the stress of trial?
Mr. Lee never became emotionally upset or frustrated during his testimony at the trial. Additionally, he answered questions on cross-examination patiently, calmly, and *182 plausibly. We find that Mr. Lee met the requirements of this Bennett factor.
| ¡¿Decision
Based on the foregoing nunc pro tunc analysis of Mr. Lee’s mental status at the time of his trial, we find that he was clearly competent to stand trial. Under the standards set forth by the Supreme Court in the Seals case, Mr. Lee’s convictions and sentences should not be nullified.
DECREE
The decision of the trial judge is affirmed for the reasons set forth in this opinion. Mr. Lee’s convictions and sentences are affirmed.
AFFIRMED.
JONES, J., respectfully dissents.

. The facts of this case are discussed in detail in the appellate opinion.

. Lee, 03-0032, p. 1, 852 So.2d at 987.

. The Bennett factors are derived from the Supreme Court’s opinion in State v. Bennett, 345 So.2d 1129, 1137 (La.1977).

. The crimes Mr. Lee committed occurred a few days after Christmas.