972 So.2d 1184 (2007)
STATE of Louisiana, Appellee
v.
Scott L. STRAIN, Appellant.
No. 42,809-KA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2007.
*1185 Paula C. Marx, Louisiana Appellate Project, for Appellant.
Paul J. Carmouche, District Attorney, Karelia R. Stewart, John Ford McWilliams, Jr., Assistant District Attorneys, for Appellee.
*1186 Before CARAWAY, DREW and MOORE, JJ.
CARAWAY, J.
After the trial court's appointment of a sanity commission which never reported to the court, Scott Strain pled guilty to false personation of a peace officer, in violation of La. R.S. 14:112.1, and was sentenced to two years at hard labor. He appeals his conviction arguing that the trial court committed error in accepting his guilty plea without first determining his mental capacity to proceed. Finding merit to his argument, we reverse the conviction and sentence.

Facts
In October of 2006, Scott Strain visited a Shreveport physician's office seeking a prescription for pain pills. When Strain was refused such a prescription, he demanded the office give him a prescription for Oxycodone or refund the money for the office visit. The incident escalated to the point that security guards were called to remove him from the office.
On October 7, 2006, Strain began incessantly calling the physician's office. Shreveport police were summoned to monitor the phone calls. In one such phone call, Strain claimed to an FBI agent, Jason Strain, who is in fact the defendant's brother, and demanded a prescription for Oxycodone. Contact with Jason Strain confirmed that his brother, Scott, had made the phone call. Agent Strain also indicated that his brother had a drug problem. Strain was charged with one count of false personation of a peace officer and initially pled not guilty.
On February 21, 2007, the defendant's appointed counsel filed a motion for appointment of a sanity commission. The motion stated that there was good reason to believe that Strain "does not presently have the mental capacity to understand the proceedings, and may not have at the time of the offense, have [sic] the ability to discern right from wrong." The motion also stated that counsel had not been able to effectively communicate with Strain, and that counsel believed Strain's mental incapacity existed "because of, or as a result of, a mental disease." The trial court appointed a sanity commission consisting of two physicians who were ordered to examine Strain concerning both his present mental state and his mental capacity at the time of the alleged offense. The doctors were to report within 30 days of the court's March 1, 2007 order, and a hearing was set for April 16, 2007.
Apparently before the doctors filed reports, Strain appeared in court with a different appointed counsel on March 26, 2007. The court noted that a bench conference had been held and that an offer apparently had been made to Strain to plead guilty with a recommendation by the state for a one-year hard-labor sentence. The court would not approve such a sentence at that time. An off-the-record discussion then took place, and the following exchange then occurred between the trial judge and Strain's attorney:
ATTORNEY: Your Honor, I have conferred with my client, and at this point he would like to withdraw his original not guilty plea' to the charge of false personation of a peace officer and would like to enter a guilty plea. And at this point, I would also like to make an oral motion to withdraw the appointment of a sanity commission as filed on February 21, 2007.
THE COURT: All right. This is Docket No. 253,459. Your full name, sir?
*1187 The court then proceeded to take Strain's guilty plea. Other than giving his date of birth and indicating that he was Scott Strain rather than Scott Strain, Jr., Strain's responses to the trial judge were either "Yes, Sir" or "No, Sir." The trial court accepted Strain's guilty plea as freely and voluntarily entered. No questions were asked or discussions had, at least on the record, concerning Strain's mental capacity.
On March 30, 2007, Strain again appeared before the court for sentencing. Strain did not testify. The trial judge reviewed Strain's criminal history and concluded that "incarceration is absolutely mandated." Strain was sentenced to two years at hard labor with credit for time served. Strain sought reconsideration of his sentence which was denied by written ruling on April, 18, 2007. This appeal followed.

Discussion
In his sole assignment of error, Strain argues that the trial court committed reversible error in accepting his guilty plea without adjudicating his competency to proceed after the sanity commission process had been invoked. The state argues that Strain's motion to appoint a sanity commission made no allegations that he did not have the requisite mental capacity. Moreover, the state contends that Strain's filing of pro se motions prior to the filing of the motion requesting the appointment of a sanity commission showed his full awareness of the nature of the proceedings. The state also argues that Strain's guilty plea acted as a waiver of all nonjurisdictional defects.
A person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing his defense may not be subject to trial. State v. Nomey, 613 So.2d 157 (La.1993). Due process also demands adequate anticipatory, protective procedures to minimize the risk that an incompetent person will be convicted. Medina v. California, 505 U.S. 437, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992). Louisiana's statutory scheme for detecting mental incapacity "jealously guards a defendant's right to a fair trial." State v. Nomey, supra. Thus, when there is a bona fide question raised regarding a defendant's capacity, the failure to observe procedures to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial. State ex rel. Seals v. State, 00-2738 (La.10/25/02), 831 So.2d 828. Once the determination that a bona fide question has been raised regarding a defendant's capacity, the failure to resolve the issue of capacity may result in nullification of the conviction and sentence or a nunc pro tune hearing to determine competency retrospectively. Id.
Mental incapacity to proceed exists when, as the result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense. La.C.Cr.P. art. 641. The defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except institution of prosecution, until the defendant is found to have the mental capacity to proceed. La. C.Cr.P. art. 642. The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed. La.C.Cr.P. art. 643.
*1188 Under La.C.Cr.P. art. 644, within seven days after a mental examination is ordered, the court is required to appoint a sanity commission to examine and report on the mental condition of the defendant. La.C.Cr.P. art. 647 provides that the issue of mental capacity shall be determined by the court in a contradictory hearing at which the sanity commission report is admissible. La.C.Cr.P. art. 648(A) states that the criminal prosecution shall resume unless the court determines by clear and convincing evidence that the defendant does not have the mental capacity to proceed.
A trial court should not allow a case to proceed based on defense counsel's withdrawal of a motion to appoint a sanity commission once a defendant's mental capacity to proceed has been raised. State v. Carney, 25,518 (La.App.2d Cir.10/13/95), 663 So.2d 470. In that case, no further steps in the prosecution may be taken until the defendant is found to have capacity. Id. Permitting such a motion to be withdrawn takes the ultimate decision of competency away from the court. Id.
Shortly before the defendant entered his guilty plea, the trial court had granted defendant's motion for appointment of a sanity commission. Thus, as noted in State v. Nomey, supra, since the examination was ordered, the trial court must have found reasonable ground to doubt defendant's mental capacity to proceed. Id. at 158, note 1; La.C.Cr.P. art. 643. Article 642 of the Code of Criminal Procedure insures that such doubt must be resolved by preventing any further steps in the criminal prosecution pending a competency determination. On the face of this record, before the end of the 30-day period set by the trial court for the psychiatric examinations and reports and without any contradietary hearing, the criminal proceedings did proceed to the entry of a guilty plea. This was clear error. State v. Nomey, supra.
Because of this error, the only issue is whether nullification of the conviction must occur or whether a remand is appropriate for a nunc pro tunc hearing. State v. Seals, supra; State v. Nomey, supra. These cases noted that in limited situations, the record of a case may indicate that meaningful inquiry into the defendant's competency can still occur. Two cases where the nunc pro tunc hearings were allowed were State v. Bennett, 345 So.2d 1129 (La.1977), and State v. Snyder, 98-1078 (La.4/14/99), 750 So.2d 832, opinion after remand, 98-1078 (La.4/14/04), 874 So.2d 739, cert. granted, judgment vacated on other grounds, Snyder v. Louisiana, 545 U.S. 1137, 125 S.Ct. 2956, 162 L.Ed.2d 884 (2005). In both of those cases, however, an initial hearing on competency had occurred before the prosecution continued.
To the contrary, this case mirrors the type of proceedings involved in the Seals and Nomey decisions. There is no adequate consideration of the sanity question reflected on the record and no prior contradictory hearing on the issue. In Nomey, the guilty plea was entered after the psychiatric examinations confirming competency were, conducted. Nevertheless, the findings of those examinations were not filed in the record prior to the plea and never considered in a contradictory hearing. The result of nullification in Nomey must therefore be followed in this case where the record gives no indication of the psychiatric examinations or their findings. Moreover, given the absence of any process seeking to resolve the competency issue and the clear mandate of Article 642, *1189 Nomey recognized a due process issue, as follows, which supports the nullification remedy:
Regardless of whether a retroactive determination of sanity can now be made, the fact remains that defendant was deprived of the protective procedures set forth in our criminal code prior to the entry of his guilty pleas, thus depriving him of his due process rights.
Id. at 161.

Conclusion
Accordingly, we do not find the narrow circumstances warranting a nunc pro tune hearing apparent in this record. Therefore, the defendant's conviction and sentence are reversed.
CONVICTION AND SENTENCE REVERSED; REMANDED FOR FURTHER PROCEEDINGS.