580 So.2d 1102 (1991)
STATE of Louisiana
v.
Norman Z. TAYLOR.
No. 90-KA-1191.
Court of Appeal of Louisiana, Fourth Circuit.
May 30, 1991.
Peter A. Barbee, Pointe-a-la-Hache, for defendant/appellant.
Before SCHOTT, C.J., and WILLIAMS and ARMSTRONG, JJ.
*1103 ARMSTRONG, Judge.
The defendant, Norman Z. Taylor, was charged by bill of information with the unlawful taking of oysters from the water bottoms of the State of Louisiana, a violation of La.R.S. 56:424(A)(1). After a trial a six member jury found the defendant guilty as charged. He was sentenced to serve one hundred and twenty days in Parish Prison. It is from this conviction and sentence that defendant has appealed.

FACTS:
According to the testimony of Deputy Sullivan from the Marine Division of the Plaquemines Parish Sheriff's Office, on April 19, 1989 at approximately 11:45 a.m., Deputy Sullivan saw a small boat in Yankee Pond in Plaquemines Parish while he was on patrol. The person in the boat was sticking his paddle straight down in the mud to locate oysters, a process for taking oysters known as "poling." As Deputy Sullivan approached the small boat, defendant, who was in the small boat, began to throw oysters he had apparently taken back into the pond with his hands. Officer Sullivan informed defendant that the area was closed and contained unleased water bottoms belonging to the State. The water bottoms of Yankee Pond belonged to the State of Louisiana as did the oysters found therein because there were no private oyster leases in the pond. Defendant told Sullivan that he would leave the area. Defendant then began to go toward his bigger boat in the small boat.
Officer Sullivan left. About fifteen minutes later, from one half mile away, Sullivan looked through his telescope to the area in Yankee Pond where he had seen defendant. He saw defendant lying flat in his small boat, hanging off the front of it, taking oysters from the water by hand and putting them in the boat. Deputy Sullivan again approached defendant. When defendant saw him, he again began to throw the oysters back in the pond. When Deputy Sullivan got to defendant's boat he observed three or four oysters still in the boat, rubber gloves used in the oyster business to keep oyster fisherman from cutting their hands on the oysters, and a cutting hatchet used to pry oysters apart. The bottom of defendant's boat was wet and muddy. Consequently, Officer Sullivan reported that defendant was unlawfully taking oysters from State water bottoms in violation of La.R.S. 56:424(A)(1).
At trial defendant testified in his own behalf. He denied that he had taken any oysters. He stated that he had gone to Yankee Pond to retrieve his small boat; that he was trying to return to his big boat in his little boat, but the water was shallow. Consequently, he was trying to pull the boat along with his paddle, not trying to locate oysters. He explained that the gloves and hatchet were in the boat because he was a commercial oyster fisherman who used this equipment to take oysters from another area where he had an oyster lease.
An examination of the record reveals no errors patent.
Defendant raises one assignment of error on appeal. The defense contends that the trial court erred in deleting a jury charge on criminal intent. The record reveals that the jury instructions originally contained a charge on criminal intent, but the State objected to it on the grounds that the State did not have to prove criminal intent under La.R.S. 56:424(A)(1). The Court agreed with the State, and deleted the instruction on criminal intent. The defense objected to the deletion.
La.R.S. 56:424(A)(1) provides:
No person shall take oysters from any part of the state or have such oysters in possession except in accordance with rules and regulations promulgated by the commission. For the purpose of this Subpart, all oysters in possession of any person in the state shall be deemed to be oysters taken from the waters of the state. Except as otherwise provided herein, the taking of oysters is prohibited in the water bottoms of the state of Louisiana.
The statute contains no language indicating that intent is an element of the crime. Specific or general intent is not a necessary element of every crime. La.R.S. 14:11 provides *1104 that in some crimes "no intent is required." La.R.S. 14:8(2) provides that criminal conduct may consist of a "mere act or failure to act that produces criminal consequences, where there is no requirement of criminal intent." Thus it appears that intent is not an element of this crime.
Moreover, even if the statute made reference to "intent," the intent involved would be general criminal intent, not specific intent unless specifically stated otherwise. La.R.S. 14:11 provides:
The definitions of some crimes require a specific criminal intent, while in others no intent is required. Some crimes consist merely of criminal negligence that produces criminal consequences. However, in the absence of qualifying provisions, the terms "intent" and "intentional" have reference to "general criminal intent."
La.R.S. 14:10 provides:
Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.
In general intent crimes, the criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal. State v. Holmes, 388 So.2d 722 (La.1980). Stated another way, once the defendant voluntarily commits the proscribed act, general criminal intent may be presumed. See, State v. Cain, 106 La. 708, 31 So. 300 (La.1902). Thus no instruction on general intent would be necessary, since the voluntary commission of the act itself is all that must be proven.
Based on the foregoing, the trial court did not err in failing to instruct the jury regarding criminal intent. Thus, we find no merit to defendant's assignment of error.
For the foregoing reasons, we affirm defendant's conviction and sentence.
AFFIRMED.