# NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 KA 0029

STATE OF LOUISIANA

VERSUS

TIMOTHY LEE ELLIOTT

*DATE OF JUDGMENT:* JUL 2 2 2019

ON APPEAL FROM THE THIRTY SECOND JUDICIAL DISTRICT COURT
NUMBER 714499, PARISH OF TERREBONNE
STATE OF LOUISIANA

HONORABLE JUAN W. PICKETT, JUDGE

* * * * * *

Joseph L. Waitz, Jr.
District Attorney
Ellen Daigle Doskey
Assistant District Attorney
Houma, Louisiana

Counsel for Appellee
State of Louisiana

Gwendolyn Brown
Baton Rouge, Louisiana

Counsel for Defendant-Appellant
Timothy Lee Elliot

* * * * * *

BEFORE: WELCH, CHUTZ, AND LANIER, JJ.

Disposition: **CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND ENHANCED SENTENCE AFFIRMED.**

Welch, J. dissents and assigns reasons

**CHUTZ, J.**

The defendant, Timothy Lee Elliot, was charged by bill of information with simple criminal damage to property where the damage amounts to five hundred dollars but less than fifty thousand dollars, a violation of La. R.S. 14:56(A)(1).[1] He pled not guilty and, following a jury trial, was found guilty as charged. The State filed a habitual offender bill of information. At a hearing on the matter, the defendant was adjudicated a fourth-or-subsequent-felony habitual offender and sentenced to twenty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The State filed a motion to reconsider sentence. The trial court granted the motion and resentenced the defendant to forty years imprisonment at hard labor without benefit of probation or suspension of sentence.[2] The defendant filed a motion to reconsider sentence, which was denied. The defendant now appeals, designating four counseled assignments of error and two pro se assignments of error.[3] We affirm the conviction, habitual offender adjudication, and enhanced sentence.

## FACTS

The defendant was an inmate at the Terrebonne Parish Jail in Ashland. On December 14, 2015, the defendant had been moved temporarily to cell 106. The defendant was locked in this cell, but the food and service hatch on the cell door was open. An inmate outside of the cell exchanged words with the defendant and closed the hatch on the door. Angered, the defendant stood on the back of the

---

[1] Although in portions of the record the defendant's last name is spelled "Elliott," we utilize the spelling set forth in the bill of information.

[2] In resentencing the defendant, the trial court correctly imposed a sentence without benefit of probation or suspension of sentence. There is no parole restriction on the enhanced sentence because the underlying sentence does not carry a parole restriction. See La. R.S. 14:56(B)(2) (prior to its modification by Acts 2017, No. 281, § 1); La. R.S. 15:529.1(A)(4)(a) & 15:529.1(G); *State v. Bruins*, 407 So.2d 685, 687 (La. 1981).

[3] In a case filed separately by the defendant but regarding the habitual offender adjudication and sentencing herein, the defendant challenges the granting of the State's motion to reconsider sentence and the subsequent denial of the defendant's motion to reconsider sentence. See *State v. Elliot*, 2019-0031 (La. App. 1st Cir. 7/22/19) (unpublished opinion).

2

toilet in his cell, reached toward the ceiling, and pulled out the speaker and its wiring from the ceiling. The defendant then used a speaker or speaker cover to strike the cell door window several times, causing a large fracture in the window. Much of the defendant's actions in the cell were captured by the jail's video camera system.

The defendant testified at trial. He denied pulling the speaker from the ceiling. He stated that when he entered the cell, the speaker had already been pulled out and the speaker parts had been placed under the bunk. The defendant admitted that he struck the window on the cell door, but denied having the intent to break it.

## COUNSELED ASSIGNMENT OF ERROR NO. 1

In his first counseled assignment of error, the defendant maintains the bill of information is fatally defective and presents an error patent on the face of the record.

The bill of information herein provides: "In violation of La R.S. 14:56.B.(2), Timothy Lee Elliot, on or about December 14, 2015, did intentionally damage any property of another, without the consent of the owner, Terrebonne Parish Consolidated Government wherein the damage amounts to five hundred dollars or more but less than $50,000.00."

The short-form indictment under La. C.Cr.P. art. 465(A)(19) provides the following: "Simple Criminal Damage to Property--A.B. committed simple criminal damage to ____ (state the property damaged) with the damage amounting to ____ dollars."

The defendant urges that the bill of information filed against him did not utilize this statutorily authorized form. That is, according to the defendant, the bill of information did not allege the item that was damaged or the amount of damage to the item.

3

The Louisiana Constitution of 1974 provides that an accused shall be informed of the nature and cause of the accusation against him. La. Const. art. I, § 13. La. C.Cr.P. art. 464 provides:

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

Article 465, however, authorizes the use of specific short-form indictments in charging certain offenses. The constitutionality of the short forms has been consistently upheld by the Louisiana Supreme Court. See *State v. Campbell*, 2006-0286 (La. 5/21/08), 983 So.2d 810, 870, cert. denied, 555 U.S. 1040, 129 S.Ct. 607, 172 L.Ed.2d 471 (2008). When those forms are used, it is intended that a defendant may procure details as to the statutory method by which he committed the offense through a bill of particulars. La. C.Cr.P. art. 465, comment (a); *Campbell*, 983 So.2d at 870. See *State v. Bedwell*, 2018-0135 (La. App. 1st Cir. 6/21/18), 2018 WL 3080356, *6 (unpublished), writ denied, 2018-1247 (La. 1/18/19), 262 So.3d 288.

The time for testing the sufficiency of a bill of information is before trial with a motion to quash. See La. C.Cr.P. arts. 532 & 535; *State v. Draughn*, 2005-1825 (La. 1/17/07), 950 So.2d 583, 623, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). The defendant herein did not file a motion to quash the bill of information. Moreover, defense counsel filed a motion for bill of particulars, and there were no objections lodged by defense counsel regarding the bill of particulars. After the defendant damaged the window and the speaker, Lieutenant Matthew Rodrigue, along with four deputies, arrived at the jail to survey the damage. They removed the defendant from the cell and placed him in a restraint chair. Therefore, as an inmate at the time he damaged the cell in which he

4

was housed, the defendant was clearly aware of the charges against him. See *State v. Lee*, 2010-1592 (La. App. 1st Cir. 11/10/10), 52 So.3d 210, 212-14, writ denied, 2010-2741 (La. 9/2/11), 68 So.3d 523. Additionally, despite the defendant's assertion, the bill of information clearly stated the amount of damage. See and compare *State v. Upchurch*, 2000-1290 (La. App. 5th Cir. 1/30/01), 783 So.2d 398, 403 (while the bill of information stated only the minimum but not the maximum amount of damage, this was sufficient to enable the defendant to prepare for trial and to allow the court to determine the propriety of the evidence which was submitted at the trial). To preserve the right to seek appellate review, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. Accordingly, the issue is not properly before this court for review. See La. C.Cr.P. art. 841(A); *Bedwell*, 2018 WL 3080356 at *4.

This counseled assignment of error is without merit.

## COUNSELED ASSIGNMENT OF ERROR NO. 2

In his second counseled assignment of error, the defendant asserts that the evidence was insufficient to support the conviction. Specifically, the defendant contends the State did not prove the value of damage.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La. C.Cr. P. art. 821(B); *State v. Ordodi*, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660. The *Jackson* standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct

5

and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, in order to convict, the factfinder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. See *State v. Patorno*, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144.

At the time of the offense, La. R.S. 14:56 provided in pertinent part:

> A. (1) Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner, and except as provided in R.S. 14:55, by any means other than fire or explosion....

> B. (2) Where the damage amounts to five hundred dollars but less than fifty thousand dollars, the offender shall be fined not more than one thousand dollars or imprisoned with or without hard labor for not more than two years, or both.

The crime of simple criminal damage to property requires only general criminal intent. *State v. Taylor*, 2007-0474 (La. App. 5th Cir. 12/27/07), 975 So.2d 10, 14, writ denied, 2008-0224 (La. 9/19/08), 992 So.2d 949. In general intent crimes, the criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal. *State v. Holmes*, 388 So.2d 722, 727 (La. 1980). Stated another way, once the defendant voluntarily commits the proscribed act, general criminal intent may be presumed. *State v. Taylor*, 580 So.2d 1102, 1104 (La. App. 4th Cir. 1991).

The defendant herein concedes that it was within the jury's discretion to determine whether the speaker was broken when he was placed in the cell; and further that it was within the jury's discretion to infer that he intended to break the glass. With regard to the value of the items broken, however, the defendant contends the evidence was legally insufficient.

Testimony at trial established that the cost of the replacement glass for the cell door was $333.60.[4] The estimate to repair the speaker system was $1,925.00.

---

[4] The defendant points out that Captain Mitchell Dupre, the Assistant Warden at the Terrebonne Parish Criminal Justice Complex, testified that the replacement glass was $650.00. But Captain Dupre admitted that he had referenced the incorrect invoice, and during the State's rebuttal case,

The evidence, therefore, established the damage for the speaker and the glass amounted to $2,258.60. The defendant contends, however, that this is insufficient to establish the value of the criminal damage since no testimony was offered to refute his contention that the glass was already cracked when he was placed in the cell. Defendant suggests that, therefore, the State was required to establish the value of the "cracked glass" in order to show the actual damage sustained. Regarding the speaker, the defendant indicated it was already broken when he was placed in the cell. Further, it was never determined if the speaker was working at the time the defendant allegedly broke it. While it was alleged the defendant caused extensive damage to the speaker system by pulling out the wires, the defendant contends the State offered no evidence to show the value of the cost of a broken system so that it could be contrasted with the cost of complete repair to a fully operational system.

Testimonial and video evidence established that the defendant caused major damage to an otherwise undamaged window on his cell door. The video of the incident revealed the following. The defendant was in his cell, the door closed and locked. The hatch on the defendant's cell door was open. Another inmate approached the defendant from outside, and they exchanged words. That inmate then closed the defendant's hatch. This caused the defendant to become animated and climbed on the back of the toilet, where he could be seen reaching for the ceiling. The defendant then climbed down from the toilet. Moments later, the defendant threw an object several times at the cell door window. Next, he held the object in his hand and beat on the window several times. He hit the window a total of twelve times during which the window broke and fractured.

---

after Captain Dupre retrieved Justice Complex damage reports, maintenance, and repair records from October 1, 2015 through December 31, 2015, the prosecutor introduced the correct invoice for the replacement glass. The invoice was for six pieces of glass at a cost of $2,001.64, or $333.60 per piece of glass.

Deputy Johnny Ivy, Jr., a corrections facility officer with the Terrebonne Parish Sheriff's Office, provided a similar recounting of the incident. Deputy Ivy was supervising the inmates in "Charlie" pod. The defendant had been placed alone in cell 106 about an hour earlier. Deputy Ivy explained that "Charlie 100" was a lockdown dorm in which the defendant's cell was located. This meant the inmates were kept in their cells twenty-three hours a day, and let out for one hour for a hygiene break. Only one inmate was allowed out of his cell at a time. According to his testimony, Deputy Ivy had given the defendant a hygiene break, and then locked him back in his cell. Frank Fowler, an inmate who was out of his cell, exchanged words with the defendant and then slammed closed the defendant's hatch hole. The defendant became enraged, "yelling and screaming." The defendant moved out of Deputy Ivy's view, but when the deputy saw the defendant again, the defendant had begun smashing the window of his cell door. Deputy Ivy notified his supervisor, and the defendant was placed in a restraint chair.

The defendant testified on cross-examination that he hit the window, but that it was already cracked. While the cell window was at some distance on a less-than-clear video, there were no apparent cracks or defects in the window before the defendant hit it. Regardless of any minor or minute imperfections that may have been present on the window, it was the defendant who banged on the glass until he broke it, causing a large, cracked, starburst pattern in the window.

Regarding the speaker, according to the defendant, the speaker and speaker parts were underneath his bunk when he got in his cell. According to Deputy Ivy, Captain Mitchell Dupre, the Assistant Warden at the Terrebonne Parish Criminal Justice Complex, and Lieutenant Rodrigue, with the Terrebonne Parish Sheriff's Office who also worked at the jail, each cell had a two-way speaker in the ceiling. The corrections officers used these speakers to communicate with the inmates in their cells. After the defendant broke the cell window and was removed from the

cell, Lieutenant Rodrigue reviewed the video of the incident. Lieutenant Rodrigue indicated he observed the defendant become upset after his hatch hole was shut; the defendant then climbed on the toilet and it appeared that he pulled down the intercom system. Thereafter, the lieutenant testified, the defendant began beating the glass with it. Lieutenant Rodrigue stated that he went inside the defendant's cell and "looked up and the speaker was gone." The lieutenant further explained, "He hid all of the pieces in the cell. So, we searched his cell and we found pieces of the speaker everywhere inside the cell." Lieutenant Rodrigue indicated that the speaker was not broken before the incident. He also testified that the defendant could reach the ceiling with ease by standing on the toilet.

The defendant did not just break the speaker when he pulled it from the ceiling, but he damaged the entire speaker system across two cell blocks because he pulled out the wires from the ceiling, as well. Captain Dupre explained that because of the size of the repair job, the jail's maintenance department could not fix it. Instead, the jail had to contract the job out with the company who had installed the speaker system, R&S Corporation, which provided a repair cost estimate of $1,925.00. According to Junius Portier, the maintenance supervisor at the Terrebonne Parish Jail, the speaker wires might be 200 feet to 300 feet long. Portier also testified that for R&S Corporation to come to the jail to give an estimate cost $400.00 or $500.00. In describing the extent of the damage, the following exchange took place with Captain Dupre on direct examination:

> A. In this case, the speaker itself wasn't the only thing damaged. The speaker was pulled from the ceiling. All of the wiring was pulled. The facility is set up where the wiring for all the speakers - if I can describe a cell block - a pod in our facility - there is a Deputy that sits in a Control Pod in the center and it has eight cellblocks, surrounding him.
> Q. Okay.
> A. Every two cellblocks, the wires go together and then go to a control room. So, when this speaker wires were pulled from the ceiling, for this repair to be done, the wiring has to be re-[run] across two different cell blocks, to a control room. And these contractors

have to go in and do that. We can't do this kind of work. They have to come in and do it. And they won't work in a cellblock where there [are] inmates being housed. So, we have to fully empty these two cell blocks, for this work to be done.

Q. All right, so this is a major project?
A. Yes.
Q. All right, and has this project been completed yet?
A. The speaker - no, it hasn't.
Q. Okay and why hasn't it been completed yet?
A. The main part being the removal of two complete cellblocks of inmates. These are both maximum security cellblocks that we are dealing with here.

Aside from the extensive damage the defendant caused to the speaker system, there was conflicting testimony over whether the speaker actually worked prior to having been torn from the ceiling. According to Deputy Ivy, as far as he knew, the speaker was operational at the time of the incident. Deputy Ivy further indicated that in the records he had checked, from October to December of 2015, there had never been a request or a maintenance issue with any speakers in C-100. According to Lieutenant Rodrigue, each cell had an operable speaker, and the pod officer tested the speakers every day. Lieutenant Rodrigue further testified that he had moved the defendant to cell 106 about one hour before the incident, and that the speaker was working.

On the other hand, Leray Vito, an inmate at the same jail as the defendant who testified for the defense, indicated that none of the speakers worked, except the one in cell 7 (107), which was Kyle Cedotal's cell. Mr. Cedotal testified that the speakers in the cellblock (C-100) did not work, except for his in cell 107.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a

10

fact finder's determination of guilt. *State v. Taylor*, 97-2261 (La. App. 1st Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See *State v. Mitchell*, 99-3342 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. *State v. Quinn*, 479 So.2d 592, 596 (La. App. 1st Cir. 1985).

When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. *State v. Captville*, 448 So.2d 676, 680 (La. 1984). In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. *State v. Higgins*, 2003-1980 (La. 4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). The jury's verdict reflected the reasonable conclusion that, based the testimony of several other witnesses, and the documentary evidence, including the videotape of the incident in the jail cell, the defendant broke the cell door and the cell speaker, causing damage of at least five hundred dollars. In finding the defendant guilty, the jury clearly rejected the defendant's theory of innocence. See *Captville*, 448 So.2d at 680.

After a thorough review of the record, we find that the evidence supports the guilty verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of simple criminal damage to property, where the damage amounted to five hundred dollars but less than fifty thousand

11

dollars. See *State v. Calloway*, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).

This counseled assignment of error is without merit.

## COUNSELED ASSIGNMENT OF ERROR NO. 3

In his third counseled assignment of error, the defendant contends the trial court erred in denying his initial request for a competency evaluation.

During voir dire, defense counsel made an oral motion for a sanity commission. The defendant's attorney informed the trial court that in the last hour or two he had a conversation with Shirley Elliot, the defendant's mother, who informed counsel of information of which he had not been aware. The defense attorney indicated that Ms. Elliot told him some things which led him to believe that defendant had some serious mental health issues. The trial court granted an oral motion for a sanity commission hearing, allowed Ms. Elliot to testify, and thereafter denied the requested relief.

According to the defendant, Ms. Elliot's testimony established that the defendant had been battling mental health issues since he was a teenager, and that he had been diagnosed with "several, seriously debilitating mental conditions." The defendant asserts that the trial court's ruling was an abuse of discretion because there was no factual basis for it, and it foreclosed the jury's determination of whether he had the ability to form the requisite intent to commit the crime. We disagree.

La. C.Cr.P. art. 642 provides:

> The defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed.

12

The proper legal standard for determining whether a criminal defendant is competent to stand trial was set forth, in pertinent part, in *State v. Carmouche*, 2001-0405 (La. 5/14/02), 872 So.2d 1020, 1041-42, as follows:

A criminal defendant has a constitutional right not to be tried while legally incompetent. *Medina v. California*, 505 U.S. 437, 449, 112 S.Ct. 2572, 2579, 120 L.Ed.2d 353, 365-66 (1992). A state must observe procedures adequate to protect a defendant's right not to be tried while incompetent, and its failure to do so deprives the defendant of his due process right to a fair trial. *Id.* In his dissent in *Medina*, Justice Blackmun expressed his opinion that due process does not simply forbid the state to try to convict a person who is incompetent, but it also "demands adequate *anticipatory, protective procedures* to minimize the risk that an incompetent person will be convicted." *Medina*, 505 U.S. at 458, 112 S.Ct. at 2584, 120 L.Ed.2d at 371 (1992) (Blackmun, J. dissenting) (emphasis in original); see also *State v. Martin*, [20]00-0489, p. 1 La. 9/22/00), 769 So.2d 1168, 1169 (per curiam); *State v. Nomey*, 613 So.2d 157, 161 (La. 1993).

Louisiana's statutory scheme for detecting mental incapacity jealously guards a defendant's right to a fair trial. *Nomey*, 613 So.2d at 161. In Louisiana, "[m]ental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." La. C.Cr.P. art. 641; see also *Nomey*, 613 So.2d at 161. Our law also imposes a legal presumption that a defendant is sane and competent to proceed. La. R.S. 15:432; *State v. Bridgewater*, 00-1529, p. 6 (La. 1/15/02), 823 So.2d 877, 888; *Martin* at p. 1, 769 So.2d at 1169. Accordingly, the defendant has the burden of proving by a preponderance of the evidence his incapacity to stand trial. A reviewing court owes the trial court's determinations as to the defendant's competency great weight, and the trial court's ruling thereon will not be disturbed on appeal absent a clear abuse of discretion. *Bridgewater* at p. 6, 823 So.2d at 888; *Martin* at p. 1, 769 So.2d at 1169. Specifically, the appointment of a sanity commission is not a perfunctory matter, a ministerial duty of the trial court, or a matter of right. *Martin* at p. 1, 769 So.2d at 1169; *State v. Nix*, 327 So.2d 301, 323 (La. 1975). It is not guaranteed to every defendant in every case, but is one of those matters committed to the sound discretion of the court. *Martin* at p. 1, 769 So.2d at 1169. The Louisiana Code of Criminal Procedure provides that a court *shall* order a mental examination of a defendant and accordingly appoint a sanity commission when it "has reasonable ground to doubt the defendant's mental capacity to proceed." La. C.Cr.P. art. 643. Reasonable ground in this context refers to information which, objectively considered, should reasonably raise a doubt about the defendant's competency and alert the court to the possibility that the defendant can neither understand the proceedings, appreciate the proceedings' significance, nor rationally aid his attorney in his defense. *State v. Snyder*, 98-1078, p. 24 (La. 4/14/99), 750 So.2d 832, 851. In the exercise of its discretion, the court may consider both lay

13

and expert testimony before deciding whether reasonable grounds exist for doubting the defendant's capacity to proceed and ruling on the defendant's motion to appoint a sanity commission. *Martin* at p. 2, 769 So.2d at 1169. [Some citations and a footnote omitted.]

At the hearing conducted during a voir dire break, Ms. Elliot indicated her son had been evaluated when he was a teenager in school. The school, according to Ms. Elliot, said the defendant was emotionally disturbed. Because a psychiatrist that the defendant saw recommended a "lock-up type unit," they went to the Devereux Foundation in Texas, where the defendant stayed for over a year. Ms. Elliot testified that her son also had been to DePaul's in New Orleans, because a judge in Houma had sent him there. And Ms. Elliot recalled that the defendant had gone to "Mental Health in Lafourche Parish" and seen "somebody there a couple of times."

On cross-examination, the State elicited from Ms. Elliot that the defendant was forty-seven years old at the time of trial, and that the issues the defendant had were all when he was a minor. Since his stay at DePaul's, the defendant had not been placed in a mental health facility, and he had never been committed by the Coroner's Office for a "3-day visit." The State then reviewed the defendant's extensive criminal history with Ms. Elliot. She either did not or could not remember if she had ever spoken with any of the defendant's attorneys about mental issues he had. According to Ms. Elliot, the defendant had been diagnosed with border-line personality disorder and with being "emotionally disturbed." She did not know what type of medication the defendant was taking, or if he was taking any medication.

In ruling on the motion, the trial court stated the following:

One of the things that I noticed, the fact that the defendant's capacity to proceed is called into question, does not for that reason alone, require the Trial Court to order a mental examination of the defendant. The appointment of a Sanity Commission is not a perfunctory matter, or ministerial duty, of the Trial Court; nor is it a guarantee to every accused in every case. In this case, I have not seen or heard any

evidence, or the evidence was insufficient to establish that the defendant lacked the capacity to understand the proceedings against him; or to assist in his own defense; nor has there been any evidence that he cannot distinguish the difference between right or wrong, at the time of the commission of the offense. So, for those reasons, I am going to deny the Application for the Sanity Commission.

We find no reason to disturb the trial court's ruling. A mental examination of a defendant is required only when there are reasonable grounds to doubt the defendant's mental capacity to proceed. See La. C.Cr. P. art. 643; *State ex rel. Seals v. State*, 2000-2738 (La. 10/25/02), 831 So.2d 828, 832. As the trial court correctly noted, there was nothing in the hearing that indicated the defendant suffered from any mental disease or defect that could have rendered him incompetent to stand trial. We note as well that the defendant entered a not guilty plea, not a not guilty and not guilty by reason of insanity plea. With no issues having been raised by any party regarding the defendant's mental health until after trial had begun and the minimal information from the defendant's mother regarding his behavioral issues as a teenager, we find no abuse of discretion in the determination that no sanity commission was warranted.

The defendant was convicted of the instant crime on March 30, 2016, and on February 15, 2017, he was before the trial court for a habitual offender hearing. At this time, the defendant's new defense counsel noted that he had filed a motion for sanity commission on November 3, 2016. The motion alleged that on August 24, 2016, the defendant attempted to commit suicide at the Terrebonne Parish Criminal Justice Complex. According to the motion, the defendant cut himself with a razor, and was placed on suicide watch. The trial court granted the motion and appointed a sanity commission to evaluate the defendant.

The defendant asserts that the trial court stated it would confine the evaluation to a determination regarding present sanity. On August 17, 2017, when the trial court took up the matter, according to the defendant's appellate brief, he

15

was found competent to proceed but that the trial court failed to address the issue of his "competency at the time of the offense." Therefore, according to the defendant, the trial court failed to address its erroneous ruling insofar as the defendant's capacity to distinguish right from wrong at the time of the offense. The defendant contends that the trial court, therefore, erred by failing to order an earlier evaluation of him.

The defendant is incorrect in his assertion that the trial court confined the evaluation to determine sanity. It had been almost one year since the defendant's trial and instant conviction when the trial court appointed a sanity commission. As such, the defendant's sanity at the time of the crime was not an issue before the trial court at the habitual offender hearing. Rather, the issue before the trial court was whether the defendant was competent to assist counsel at the habitual offender/sentencing hearing.[5]

At the August 17, 2017 habitual offender hearing, the trial court noted that he was in receipt of the reports from the two doctors who had examined the defendant. The trial court informed counsel that the doctors had found that the defendant could assist his attorney and that he was competent to proceed. Accordingly, trial court ruled, "Based on the opinions of both of the doctors, the Court finds that [the defendant] can assist his attorney, and this matter can proceed forward." Thereafter, the habitual offender hearing was conducted; the defendant was adjudicated a sixth-felony habitual offender and sentenced.

---

[5] Specifically, the following colloquy occurred between the State and the trial court at the time the motion for a sanity commission was granted:

> The prosecutor: Now just to be clear, we are only talking about his ability to proceed with what is going on?
> By the Court: Yes, to assist his counsel.
> By the prosecutor: We are not talking about defenses to the crimes he has already been convicted of?
> By the Court: No, just to assist his counsel.

Based on the foregoing, we find no abuse of discretion in the trial court's grant of the motion for a sanity commission to determine the defendant's competence to assist at his habitual offender adjudication and sentencing.

This counseled assignment of error is without merit.

## COUNSELED ASSIGNMENT OF ERROR NO. 4

In his fourth counseled assignment of error, the defendant argues his sentence is excessive.

The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. *State v. Sepulvado*, 367 So.2d 762, 767 (La. 1979). A sentence is considered unconstitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Andrews*, 94-0842 (La. App. 1st Cir. 5/5/95), 655 So.2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. See *State v. Holts*, 525 So.2d 1241, 1245 (La. App. 1st Cir. 1988). Article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. *State v. Brown*, 2002-2231 (La. App. 1st Cir. 5/9/03), 849 So.2d 566, 569.

The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is

unnecessary even where there has not been full compliance with Artcile 894.1. *State v. Lanclos*, 419 So.2d 475, 478 (La. 1982). The trial court should review the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. See *State v. Jones*, 398 So.2d 1049, 1051-52 (La. 1981). Even when a trial court assigns no reasons, the sentence will be set aside on appeal and remanded for resentencing only if the record is either inadequate or clearly indicates that the sentence is excessive. See La. C.Cr. P. art. 881.4(D); *State v. Knight*, 2011-0366 (La. App. 1st Cir. 9/14/11), 77 So.3d 302, 304, writ denied, 2011-2240 (La. 2/17/12), 82 So.3d 283. On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Thomas*, 98-1144 (La. 10/9/98), 719 So.2d 49, 50 (per curiam).

With a sentencing exposure of twenty years to life imprisonment, the defendant was sentenced to forty years at hard labor without benefit of probation or suspension of sentence. The defendant suggests that his sentence is excessive because all but his previous conviction of battery of a correctional facility employee, which occurred more than sixteen years before the instant offense, were non-violent offenses. Further, according to the defendant, this simple criminal damage offense, which consisted of his breaking glass and a speaker in his cell, occurred only after he was provoked by a fellow inmate who closed the hatch hole to his cell, "causing him grave distress."

We find no abuse of discretion by the trial court. In denying the defendant's motion to reconsider sentence, the trial court noted in pertinent part:

> The Court was of the opinion, when I made the ruling previously, that the State met its burden of proof beyond a reasonable

18

doubt that [the defendant] had been previously convicted of six prior felonies - one of which was a crime of violence.

Specifically, the evidence was sufficient to support the finding that [the defendant] was found guilty on March 30, 2016 of Simple Criminal Damage to Property, where the amounts were more than $500.00 but less than $50,000.00; and he is the same person [who was] previously convicted for Battery of a Correctional Employee; Simple Burglary; Illegal Possession of Stolen Things over $500.00; Simple Arson; Attempted Simple Escape - all as outlined in the Bill of Information - the Habitual Offender Bill of Information, filed by the State.

Accordingly, the Court adjudged [the defendant] as a six -time felony offender, with one prior crime of violence felony conviction. Having considered [the defendant's] previous convictions, the Court was of the opinion that there is an undue risk that during any period of a lesser sentence, that [the defendant] would commit another crime; that [the defendant] was in dire need of correctional treatment; that a lesser sentence would deprecate the seriousness of the offense; and therefore, the Court sentenced [the defendant] to a term of 40 years, which was less than the life sentence.

While the classification of a defendant's instant or prior offenses as non-violent should not be discounted, this factor has already been taken into account under the Habitual Offender Law for third and fourth offenders. See *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So.2d 672, 676. Moreover, the defendant was not sentenced to forty years imprisonment for the relatively minor offense of damaging property in his cell or for mostly non-violent offenses. Rather, he received this *enhanced* sentence because of his continued lawlessness as a repeat offender. Under the Habitual Offender Law, a defendant with multiple felony convictions is treated as a recidivist who is to be punished for his instant crime in light of his continuing disregard for the laws of our State. He is subjected to a longer sentence because he continues to break the law. See *Johnson*, 709 So.2d at 677; *State v. Spikes*, 2017-0087 (La. App. 1st Cir. 9/15/17), 228 So.3d 201, 206.

Accordingly, the forty-year sentence is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive.

This counseled assignment of error is without merit.

## PRO SE ASSIGNMENTS OF ERROR NOS. 1 and 2

In these related pro se assignments of error, the defendant claims he was sentenced under the wrong habitual offender provision because none of his prior convictions was a crime of violence.

According to the defendant, battery of a correctional facility employee is not a crime of violence because it is not listed as such in La R.S. 14:2(B). Further, since his conviction would not be final until after November 1, 2017, he should have been sentenced under the amended version of La. R.S. 15:529.1(A)(4)(b), which provides:

> If the fourth felony and no prior felony is defined as a crime of violence under R.S. 14:2(B) or as a sex offense under R.S. 15:541, the person shall be imprisoned for not less than twenty years nor more than twice the longest possible sentence prescribed for a first conviction. If twice the possible sentence prescribed for a first conviction is less than twenty years, the person shall be imprisoned for twenty years.

For simple criminal damage to property (where damage amounts to five hundred dollars but less than fifty thousand dollars), the offender shall be imprisoned for not more than two years. See La. R.S. 14:56(B)(2). Under the amended La. R.S. 15:529.1(A)(4)(b), the defendant's maximum sentence exposure would be twenty years. Thus, according to the defendant, his forty-year sentence is unconstitutionally excessive.

The defendant's assertions are baseless. At the habitual offender hearing, defense counsel suggested that none of the defendant's prior convictions were crimes of violence; and that battery of a correctional facility employee was not listed under La. R.S. 14:2 as a crime of violence. The prosecutor disagreed, arguing that the list of crimes in La. R.S. 14:2 is illustrative, and that by the very nature of the crime of battery of a correctional facility employee, it was a crime of violence. The trial court stated it was of the opinion that the defendant had never been convicted of a crime of violence and, accordingly, sentenced the defendant to

20

twenty years imprisonment at hard labor, pursuant to La. R.S. 15:529.1(A)(4)(a). The trial court further noted that whether the defendant was sentenced under the law at that time (August of 2017) or under the new law,[6] the defendant was subject to the same sentencing range. Both prior and subsequent to November 1, 2017, the salient provisions of La. R.S. 15:529.1(A) are identical:

> (4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:[7]
>
> (a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life.

The State objected to the twenty-year enhanced sentence and filed a motion to reconsider sentence. At the hearing on this matter, the trial court noted that in *State v. Smith*, 45,430 (La. App. 2d Cir. 8/11/10), 47 So.3d 553, 555-56, writ denied, 2010-2384 (La. 3/4/11), 58 So.3d 474, the court found that battery of a correctional facility employee was a crime of violence. See also *State v. Oliphant*, 2012-1176 (La. 3/19/13), 113 So.3d 165, 170 (concluding that because the list of enumerated crimes in La. R.S. 14:2(B) is merely illustrative, listed offenses may be denominated as crimes of violence under the general definition of the term provided by the statute). Accordingly, the trial court granted the State's motion to reconsider sentence and resentenced the defendant to forty years imprisonment at hard labor without benefit of probation or suspension of sentence. The trial court also correctly pointed out, as it had at the habitual offender hearing, that even with this prior conviction designated as a crime of violence, the same provision of La.

---

[6] The version of the habitual offender law that became effective on November 1, 2017 provided that the modification shall have prospective application as to those convictions which were final on or after November 1, 2017. Here, the trial court was of the opinion that the defendant's conviction would not become final prior to November 1, 2017. In 2018, however, the habitual offender statute was again amended with the addition of Subsection K., which provided that "notwithstanding any provision of law to the contrary, the court shall apply the provisions of this Section that were in effect on the date that the defendant's instant offense was committed." See *State v. Cagler*, 2018-0427 (La. App. 1st Cir. 11/7/18), 2018 WL 5876878, *14 (unpublished).

[7] La. Acts 2017, No. 257, § 1 added the phrase "the following sentences apply" at the end of paragraph (A)(4).

21

R.S. 15:529.1(A)(4)(a) was applicable, resulting in the same sentencing exposure under either version of the law.

Based on the foregoing, we find no error in the trial court rulings. Battery of a correctional facility employee is a crime of violence and, as such, La. R.S. 15:529(A)(4)(a) (either version), rather than the amended version of La. R.S. 15:529(A)(4)(b), was the correct provision under which to sentence the defendant.

These pro se assignments of error are without merit.

## DECREE

For these reasons, we affirm the trial court's conviction, habitual offender adjudication, and sentence.

**CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND ENHANCED SENTENCE AFFIRMED.**

STATE OF LOUISIANA                                    2019 KA 0029

VERSUS

TIMOTHY LEE ELLIOTT

*JEW*

**Welch, J. concurring in part and dissenting in part.**

While I agree with the majority opinion that the issue of whether the bill of information was fatally defective is not properly before us, that the evidence was sufficient to support the conviction, and that the trial court did not abuse its discretion with respect to the request for a competency evaluation, I disagree with the majority's conclusion as to the excessiveness of the defendant's sentence for the reasons set forth in my dissent in **State v. Elliot**, 2019-0031 (La. App. 1st Cir. 7/22/19). In accordance with the reasons set forth therein, I would vacate the defendant's habitual offender sentence of forty years and remand for the trial court to impose a sentence that is constitutional.