| STATE OF LOUISIANA | * | NO. 2019-KA-0440 |
| | | |
| VERSUS | * | COURT OF APPEAL |
| | | |
| NYTILEX JONES | * | FOURTH CIRCUIT |
| | | |
| | * | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 517-806, SECTION "K"
Honorable Arthur Hunter, Judge

\* \* \* \* \* \*

**Judge Joy Cossich Lobrano**

\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Joy Cossich Lobrano)

*Dysart, J., Dissents with Reasons*

Leon Cannizzaro
District Attorney
Donna Andrieu
Irena Zajickova
DISTRICT ATTORNEY'S OFFICE
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

     COUNSEL FOR STATE/APPELLEE

Sherry Watters
LOUISIANA APPELLATE PROJECT

P. O. Box 58769
New Orleans, LA 70158

Nytilex Jones #431888
Louisiana State Penitentiary
Angola, LA 70712

Barksdale Hortenstine, Jr.
ORLEANS PUBLIC DEFENDERS
2601 Tulane Avenue, 7th Floor
New Orleans, LA 70119

  COUNSEL FOR DEFENDANT/APPELLANT


**CONVICTION AND SENTENCE VACATED;**
**REMANDED.**

**AUGUST 5, 2020**

*JCL, RLB*     The defendant, Nytilex Jones ("Defendant"), has appealed his conviction of second-degree murder and the mandatory sentence of life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. After reviewing the record and applicable law, and for the following reasons, we vacate Defendant's conviction and sentence and remand to the district court for a new trial.

**PROCEDURAL HISTORY**

Defendant was charged with the July 27, 2013 second-degree murder of Samuel Kelly ("Victim"), a violation of La. R.S. 14:30.1. Defendant appeared for arraignment and entered a plea of not guilty. Defendant filed a motion to suppress evidence, statement, and identification the same day. After Defendant fired and obtained new counsel on numerous occasions, the State requested a mental competency evaluation and hearing. At the hearing on June 18, 2015, Defendant was represented by counsel from the New Orleans Office of Public Defenders ("OPD"). Because Defendant had been uncooperative during the evaluation, the court ordered another competency evaluation. At the second competency hearing

on August 13, 2015, during which Defendant was represented, the district court accepted the sanity commission's recommendation and found Defendant competent to proceed to trial. On April 25, 2016, Defendant filed a *pro se* motion for a change of venue.

The district court subsequently denied Defendant's motions for a change of venue, as well as previously filed motions to suppress evidence, identification, and statement. On September 26, 2016, Defendant filed a motion to recuse the district judge and the case was transferred from Section "C" to Section "K." On May 3, 2017, Defendant filed a motion to exclude the video surveillance evidence. Following a hearing to determine authenticity and reliability, the motion was denied on September 29, 2017.

On November 21, 2017, Defendant moved for another mental competency evaluation and hearing. On November 28, 2017, defense counsel filed a motion to withdraw after Defendant again refused to accept assistance from appointed counsel. Defense counsel also filed motions for a psychiatric exam and to present basis for competency hearing. The district court granted the motion to withdraw and entered a finding on the record that defendant had voluntarily waived his right to assistance of counsel. The court then proceeded with the third hearing on the renewed competency motion at which Defendant was unrepresented. Defendant's privately retained expert testified and recommended that another sanity

commission be appointed.[1] The district court accepted the expert's recommendation and ordered another competency evaluation. The district court held a competency hearing on December 19, 2017, and again found Defendant competent to proceed to trial. Defendant was unrepresented at this hearing.

Defendant proceeded to trial on June 5, 2018, *pro se*, but the district court declared a mistrial following opening statements during which Defendant demanded an attorney and agreed to accept the assistance of appointed counsel. On September 18, 2018, the morning of Defendant's second trial, the court denied a renewed motion for a competency evaluation and began jury selection.[2] Following a three-day trial during which Defendant was represented by counsel, the jury returned a unanimous verdict of guilty as charged. On October 9, 2018, Defendant filed motions for a new trial, post-verdict judgment of acquittal, arrest of judgment, and downward departure from the mandatory sentence, all of which were denied.

On October 11, 2018, the district court sentenced Defendant to the mandatory sentence of life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence over Defendant's objection.

**ERRORS PATENT**

A review of the record reveals no errors patent.

---

[1] Dr. Sarah DeLand believed Defendant suffered from paranoid delusions that would affect his ability to assist his attorney, specifically, that the surveillance video was reconstructed and the entire criminal justice system was rigged against him.

[2] Defense counsel unsuccessfully moved for reconsideration of the competency issue at every subsequent proceeding, bench conferences or discussions in chambers.

**ASSIGNMENTS OF ERROR**

Defendant has assigned the six errors for our review. However, finding that the district court erred in allowing Defendant to represent himself during his final competency hearing, we pretermit discussion of the remaining assignments.

**DISCUSSION**

Defendant contends that reversal of his conviction is required because he was denied counsel at his final competency hearing at which the court erroneously found him competent to proceed to trial.

The State responds that the district court had already found Defendant competent to proceed to trial following two competency hearings at which Defendant was represented by appointed counsel, therefore, the failure to have counsel at any subsequent competency hearing would be harmless error.

Defendant was afforded four competency hearings.[3] The first, requested by the State, was held on June 18, 2015, at which Defendant was represented by OPD. Defendant was examined by Drs. Richard Richoux and Raphael Salcedo. Dr. Richoux testified that he could not complete the examination because Defendant was deliberately uncooperative. Dr. Richoux recommended that Defendant be remanded to a mental facility where he could be continuously observed to provide a more thorough evaluation.[4]

---

[3] The first two hearings occurred while Defendant's case was pending in Section "C" and the second two were conducted after the case was transferred to Section "K."

[4] Dr. Richoux also testified that Defendant stated he diagnosed himself as a paranoid schizophrenic, although he neither had been professionally diagnosed nor sought treatment for the condition (or any other mental condition). Dr. Salcedo concurred with Dr. Richoux's assessment and recommendation.

The court rejected the recommendation.[5] Defendant then questioned the authenticity of the video surveillance footage the State had provided in discovery and moved for its suppression. The court explained that his concerns could not be addressed until his competency was determined. Defendant insisted he was competent and submitted to the court a written *pro se* motion to suppress the footage. The court ordered a second mental evaluation and competency hearing.

On July 9, 2015, Defendant appeared for his second competency hearing without counsel. The court continued the hearing until he obtained new counsel.

On August 13, 2015, Defendant appeared for the second competency hearing represented by counsel. Dr. Richoux testified that Defendant was cooperative during the examination. Defendant denied any history of psychiatric treatment and denied that he suffered "from any symptoms of possible mental illness." Dr. Richoux did not observe manifestation of any psychotic symptoms. Defendant presented nothing to suggest he was incapable of assisting his attorneys with his defense, or that he was unable to testify on his own behalf or make well-informed decisions. Dr. Richoux testified that Defendant satisfied the *Bennett*[6] criteria and that he was competent to stand trial.

---

[5] The district court explained that it was familiar with Defendant and believed that he was intelligent and simply malingering.

[6] In *State v. Bennett*, 345 So.2d 1129, 1138 (La. 1977), the Supreme Court set forth factors to consider when determining if an accused's ability to assist in his defense.

> Facts to consider in determining an accused's ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.

On cross-examination, Dr. Richoux explained that deliberate obstination and disrespect of authority may be symptomatic of a personality disorder, but did not determine competency to stand trial. Moreover, Dr. Richoux found nothing to support a diagnosis of a personality disorder, although he admitted that he had not consulted with any of Defendant's previous attorneys during his evaluation.[7]

The court found Defendant competent to proceed, but cautioned him to stop firing his appointed attorneys or he would have to represent himself at trial; Defendant indicated that he understood the court's ultimatum. On September 26, 2016, the morning of trial, Defendant filed a motion to recuse the judge, which the court granted over the State's objection. Accordingly, the case was transferred from Section "C" to Section "K."

On November 21, 2017, Defendant demanded that the court remove his current counsel of record and refused any further representation by OPD. The court denied Defendant's motion and informed counsel that either he or someone from OPD, should prepare to represent Defendant at trial. The court set a hearing to determine counsel and competency for November 28, 2017.

On November 28, 2017, Defendant again stated he wanted no further representation by a public defender. After extensive questioning,[8] the district court found that Defendant had voluntarily waived his right to have a lawyer represent him.

Following that exchange, the court granted OPD's motion to withdraw as counsel and proceeded with the third competency hearing. The court called Dr.

---

[7] Dr. Salcedo concurred with Dr. Richoux's assessment and recommendation.

[8] During the questioning, Defendant stated that he had never represented himself in a criminal case and had a sixth-grade education with difficulty in understanding and reading.

DeLand to the stand and conducted the direct examination. Dr. DeLand testified that she had conducted a mental examination of Defendant at the request of his former counsel. She spoke with several of Defendant's prior attorneys, Defendant, his mother, and two sisters. Dr. DeLand believed Defendant suffered from paranoid delusions that would affect his ability to assist his attorney, specifically that the surveillance video was reconstructed, and that the entire criminal justice system was rigged against him.[9] Furthermore, she did not think that Defendant's assertion that court officials had conspired to suppress the real surveillance video was "a reasonable and consistent defense strategy," and therefore concluded that Defendant was incapable of representing himself. Dr. DeLand recommended that yet another competency hearing be held.

Defendant's fourth competency hearing took place on December 19, 2017, at which he was again unrepresented. After another mental evaluation by Drs. Richoux and Salcedo, Dr. Richoux indicated that Defendant had refused representation by OPD during the evaluation and at the hearing. Dr. Richoux testified that Defendant refused to participate in the evaluation and gave no verbal response to any questions posed. Nevertheless, Dr. Richoux reviewed his reports from previous evaluations, spoke to one of Defendant's former attorneys who relayed the concerns regarding the surveillance footage, and reviewed Dr. DeLand's report. He testified that Defendant's assertions regarding the video footage "taken at face value could be viewed as delusional," but may also be subject to alternative interpretations, specifically "a purposeful attempt to delay the

---

[9] Dr. DeLand testified that she was aware of the possibility that Defendant was malingering, however, she found it more likely that he suffered from a legitimate mental illness based on his receipt of a disability check since childhood, and his sisters' account that "there are some other family members also with mental illness." She also testified that Defendant told her he heard voices and that he received personal messages through the television.

9

legal proceedings," or simply "a massive form of denial," that may present as delusion. Accordingly, Dr. Richoux was not convinced that Defendant suffered from any identifiable mental illness and recommended that Defendant be found competent to proceed. Defendant refused to participate in the hearing or reply to the court's questions. The court found Defendant competent and denied all subsequent counseled defense motions to revisit the issue.

In order to decide this issue, we first look to the Louisiana Code of Criminal Procedure that includes a subsection (Title XXI) dedicated to insanity proceedings.

To determine a defendant's mental incapacity, we apply La. C.Cr.P. arts. 641, 642, 643, and 647. Pursuant to La. C.Cr.P. art. 641, "[m]ental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." As a general matter, La. C.Cr.P art. 642 allows "[t]he defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court." The Article mandates that "[w]hen the question of the defendant's mental incapacity to proceed is raised, there **shall** be no further steps in the criminal prosecution ... until the defendant is found to have the mental capacity to proceed." *Id.* (Emphasis added.)

Next, Article 643 provides:

> The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed. **Prior to the ordering of any such mental examination, the court shall appoint counsel to represent the defendant if he has not already retained counsel**. (Emphasis added.)

Lastly, if a defendant's mental incapacity has been properly raised, the proceedings must continue under La. C.Cr.P. art. 647, which states:

10

The issue of the defendant's mental capacity to proceed shall be determined by the court in a **contradictory** hearing. The report of the sanity commission is admissible in evidence at the hearing, and members of the sanity commission may be called as witnesses **by the court, the defense, or the district attorney**. Regardless of who calls them as witnesses, the members of the commission are subject to cross-examination by the defense, by the district attorney, and by the court. Other evidence pertaining to the defendant's mental capacity to proceed may be introduced at the hearing by the defense and by the district attorney. (Emphasis added.)

Pursuant to Article 643, prior to ordering a mental examination of a defendant, the district court must appoint counsel to represent him/her. This is buttressed by Article 647, which requires a contradictory hearing during which the defense is entitled to question any witness testifying on the issue of a defendant's competency.

The proper legal standard for determining whether a criminal defendant is competent to stand trial was set forth in *State v. Carmouche,* 01-0405, pp. 29-30 (La. 5/14/02), 872 So.2d 1020, 1041 (subsequent history omitted):

> A criminal defendant has a constitutional right not to be tried while legally incompetent. *Medina v. California*, 505 U.S. 437, 449, 112 S.Ct. 2572, 2579, 120 L.Ed.2d 353, 365-66 (1992)....A state must observe procedures adequate to protect a defendant's right not to be tried while incompetent, and its failure to do so deprives the defendant of his due process right to a fair trial. *Id....* In his dissent in *Medina*, Justice Blackmun expressed his opinion that due process does not simply forbid the state to try to convict a person who is incompetent, but it also "demands adequate **anticipatory, protective procedures** to minimize the risk that an incompetent person will be convicted." *Medina*, 505 U.S. at 458, 112 S.Ct. at 2584, 120 L.Ed.2d at 371 (1992) (Blackmun, J. dissenting) (emphasis in original); *see also State v. Martin*, 00-0489, p. 1 (La. 9/22/00), 769 So.2d 1168, 1169 (*per curiam*); *State v. Nomey*, 613 So.2d 157, 161 (La. 1993).

Louisiana's statutory scheme for determining whether a defendant is mentally competent to stand trial jealously guards the defendant's right to a fair trial. *State v. Anderson,* 06-2987, p. 20 (La. 9/9/08), 996 So.2d 973, 992 (citing

*State v. Nomey*, 613 So.2d 157, 161 (La. 1993)). Where a *bona fide* question is raised regarding a defendant's capacity, the failure to observe procedures to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial. *State ex rel. Seals v. State,* 00-2738, p. 6 (La. 10/25/02), 831 So.2d 828, 833 (citation omitted).

The Sixth Amendment requires the relinquishment of the right to counsel to be voluntary, knowing, and intelligent. It has long been held that if a defendant's competency is questioned, a defendant is unable to waive his right to counsel until deemed competent. *See Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 838 (1966); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 1025 (1938) (a criminal defendant may not be tried unless he is competent and he may not waive his right to counsel or plead guilty unless he does so competently and intelligently).[10]

The district court understood this at the June 18, 2015 competency hearing. Following an order that another competency evaluation and hearing take place, Defendant questioned the authenticity of the video surveillance footage provided in discovery and moved for its suppression. The court explained that his concerns

---

[10] Several federal courts of appeals have held that a defendant may not waive the right to representation of counsel during competency proceedings. *United States v. Frazier-El,* 204 F.3d 553, 559 (4th Cir. 2000) ("The Supreme Court has made clear that the standard of competence for waiving counsel is identical to the standard of competence for standing trial. *See Godinez*, 509 U.S. at 396–97, 113 S.Ct. 2680. Therefore, the district court's refusal to permit Frazier–El to represent himself until the issue of competency was determined was clearly justified."); *United States v. Ross,* 703 F.3d 856, 871 (6th Cir. 2012) ("[T]he Constitution requires a defendant to be represented by counsel at his own competency hearing, even if he has previously made a knowing and voluntary waiver of counsel."); *United States v. Klat,* 156 F.3d 1258, 1263 (D.C.Cir.1998) ("[W]here a defendant's competence to stand trial is reasonably in question, a court may not allow that defendant to waive her right to counsel and proceed *pro se* until the issue of competency has been resolved."); *United States v. Purnett,* 910 F.2d 51, 55 (2d Cir.1990) ("[T]he trial court cannot simultaneously question a defendant's mental competence to stand trial and at one and the same time be convinced that the defendant has knowingly and intelligently waived his right to counsel."); *United States v. Kowalczyk*, 805 F.3d 847, 858 (9th Cir. 2015) ("[A]s a person whose competence to stand trial was in question, Kowalczyk could not legally waive his right to counsel; thus he was entitled to be represented by an attorney at his competency hearing.)

could not be addressed **until** his competency was determined. On July 9, 2015, Defendant appeared for his second competency hearing without counsel. The district court continued the hearing **until** Defendant was appointed new counsel.

A district court's failure to follow statutory provisions in determining defendant's mental capacity to proceed violates a defendant's due process rights. *State v. Cretian,* 17-0777, p. 9 (La.App. 4 Cir. 1/24/18), 238 So.3d 473, 478. It is well-established that "[t]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *State v. Nomey,* 613 So.2d 157, 161 (La. 1993); *Cretian,* 17-0777, p. 9, 238 So.3d at 478.

We find that Defendant could not waive his right to counsel before his December 19, 2017, competency hearing. In other words, any waiver of counsel by Defendant before his fourth contradictory competency hearing was invalid.

In *State ex rel. Seals v. State*, 00-2738, p. 6 (La.10/25/02), 831 So.2d 828, 833, the Supreme Court noted that where the district court failed to resolve the issue of a defendant's competency, nullification of the conviction and sentence may be appropriate, citing *Nomey,* 613 So.2d at 161-62. On the other hand, "[i]n certain instances, a *nunc pro tunc* hearing on the issue of competency is appropriate if a meaningful inquiry into the defendant's competency may still be had." *Id.* (citing *State v. Snyder,* 98-1078 (La. 4/14/99), 750 So.2d 832, *opinion after remand,* 98-1078 (La. 4/14/04), 874 So.2d 739, *cert, granted, judgment vacated on other grounds, Synder v. Louisiana,* 545 U.S. 1137, 125 S.Ct. 2956, 162 L.Ed.2d 884 (2002)). "A 'meaningful' determination is possible 'where the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the defendant's condition at the time

of the original ... proceedings.'" *State v. Camper,* 08-0314, p. 17, n. 7 (La.App. 4 Cir. 10/1/08), 996 So.2d 571, 583 (quoting *Snyder,* 98-1078, p. 31, 750 So.2d at 855.) "If a retrospective determination cannot be made, or if it is determined that defendant was not competent at the time of trial, the defendant shall be entitled to a new trial." *Id.* Due to the violation of Defendant's constitutional right to counsel, we find remand inappropriate.

The United States Supreme Court has consistently held there should be a new trial if there has been some constitutional defect regarding the defendant's competency. *See, e.g., Drope v. Mis*souri, 420 U.S. 162, 183, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) (granting a new trial when trial court refused to conduct a hearing to determine the defendant's competence to stand trial); *Pate*, 383 U.S. at 386-87, 86 S.Ct. 836 (ordering a new trial for a defendant who did not receive an adequate competency hearing); *Dusky v. United States*, 362 U.S. 402, 403, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam) (vacating the conviction after holding that there were insufficient facts to support the finding that petitioner was competent to stand trial and recognizing the "difficulties of retrospectively determining the petitioner's competency as of more than a year ago.").

The right to assistance of counsel is "one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty." *Johnson, supra*, 304 U.S. at 462, 58 S.Ct. 1019. "The right to counsel in our adversarial system is sacrosanct." *State v. Haider*, 00-0231, p. 8 (La.App. 3 Cir. 10/11/00), 772 So.2d 189, 194. Similar to *Haider*, this Defendant's total lack of representation at his competency hearing violated his right to counsel. *Id*. That the district court previously found Defendant competent, with counsel present, is of no moment given that the court re-opened competency proceedings after hearing

Dr. DeLand's testimony. Under these circumstances, the violation of Defendant's right to counsel requires us to vacate his conviction and sentence and remand the case for a new trial.

**CONCLUSION**

For the reasons set forth above, we vacate Defendant' conviction and sentence and the matter is remanded to the district court for a new trial.

**CONVICTION AND SENTENCE VACATED; REMANDED.**

15